In the Matter of 1175 EVERGREEN AVENUE, BRONX COUNTY.*

Supreme Court, Additional Special Term, Bronx County, November 16, 1935.

* Affd., 270 N. Y. 436.

*Benjamin J. Rabin [Lawrence S. Greenbaum* and *David Brown* of counsel], for the State Mortgage Commission.

*Rapaport Bros. [Henry N. Rapaport* of counsel], for William Lauro, certificate holder, and others.

COHN, J. Pursuant to the Mortgage Commission Act (Laws of 1935, chap. 19, as amd.), the Mortgage Commission of the State of New York has promulgated a plan for readjustment of a certificated mortgage covering premises located at No. 1175 Evergreen avenue, in the county of Bronx, city and State of New York, payment of principal and interest of the mortgage having been guaranteed by the Bond and Mortgage Guarantee Company. The unpaid principal amount of the mortgage is $100,000. There are due arrears of taxes, interest and amortization payments of the principal amount of the mortgage. Since March 1, 1935, the property has been managed by the owner under an assignment of rents executed by him to the State Mortgage Commission.

The plan promulgated proposes to extend the payment of the principal of the mortgage for a period of two years from July 1, 1936, with the rate of interest reduced, beginning with January 1, 1934. As a condition precedent to the granting of the proposed extension and modification agreement, the owner is required to pay all arrears of taxes, interest (upon the basis of the adjusted rates) and expenses of the proceedings for reorganization.

At the hearing conducted to pass upon this plan proposed under the Mortgage Commission Act, the power of the court to approve it has been challenged by a certificate holder appearing specially for that purpose. He urges that the Mortgage Commission Act is unconstitutional because (1) it authorizes the court to approve a plan of reorganization without the affirmative assents of the certificate

holders in violation of the State and Federal Constitutions, and (2) it makes no adequate provision for service upon certificate holders of notice of the proceedings. In considering these questions, it must be observed preliminarily that courts of original jurisdiction, under well-settled principles of law, should not declare a statute unconstitutional unless the violations are plain and patent upon the face of the statute.

Considering now the first contention, our highest court, in affirming the constitutionality of the so-called Schackno Act (Laws of 1933, chap. 745, as amd.), has already upheld the principle that two-thirds in amount of participation certificate holders of a mortgage whose contents are affirmatively expressed may bind all to a fair plan when such plan is approved by the court. (*Matter of People [Title & Mortgage Guarantee Co. of Buffalo]*, 264 N. Y. 69.) The following language from the lucid opinion of Judge LEHMAN, who wrote for the court in that case, is apposite (264 N. Y. 69, at p. 93): " The fairness of these provisions is evident. They do not give to a majority in interest, however large, the power to coerce another holder to accede to any plan of reorganization by the majority. They do not give the court power to coerce a single holder to accede to any plan of which the court approves. They do give the court authority, after a hearing, to approve a reorganization plan which is consented to by two-thirds in amount of those interested and to declare such plan effective."

And again (at p. 95): " The statute is directed solely towards facilitating agreement among such holders in a plan which will be fair to all and to prevent unreasonable insistence upon the letter of the obligation of contracts when, under changed conditions, such insistence might work injury both to individuals similarly situated and to the community."

Such legislation, it has been decided, is not repugnant to the clause of our Federal Constitution which inhibits a State from passing any law impairing the obligations of a contract (U. S. Const. art. 1, § 10); nor does it contravene the mandate of the Fourteenth Amendment which commands that no State shall deprive any person of life, liberty or property without due process of law. (*Matter of People [Title & Mortgage Guarantee Co. of Buffalo]*, 264 N. Y. 69. Cf. also *Klinke* v. *Samuels*, Id. 144, 149; *Matter of People [New York Title & Mortgage Co.]*, Id. 475; appeal dismissed in the United States Supreme Court, *Abrams* v. *Van Schaick*, 293 U. S. 188, 189; 55 S. Ct. 135, 136; 79 L. Ed. 278, " for the want of a substantial federal question.") (See, also, *Doty* v. *Love*, 295 U. S. 64, at p. 71; 55 S. Ct. 558; 79 L. Ed. 1303, and cases there cited; *Canada Southern R. Co.* v. *Gebhard*, 109 U. S. 527; 3 S. Ct. 363; 27 L. Ed. 1020; *Miller*

v. *National Chautauqua County Bank of Jamestown*, 240 App. Div. 169.)

The Mortgage Commission Act does not supersede the Schackno Act except to a limited extent. (Mortgage Commission Act, art. 8, § 18.) The Mortgage Commission Act permits approval by the court of a plan of reorganization unless " holders in the aggregate of more than thirty-three and one-third per centum of the face amount of mortgage investments affected by such  *   *   *  plan " file with the clerk of the court prior to the return date written dissents from the plan. (Art. 5, § 7, as amd. by Laws of 1935, chap. 290, § 7.) It further provides that " all holders of mortgage investments who have not dissented from the proposal or plan in the manner provided by this section shall be conclusively deemed to have assented thereto." Under the Schackno Act, which became effective May 3, 1933, affirmative written consents of sixty-six and two-thirds per centum of principal amount of the certificate holders are required before the plan, after approval by the court, may become effective. (§ 8.) By the terms of that law, failure to assent is counted as a dissent. Under the method outlined in the Mortgage Commission Act, in effect February 5, 1935, failure to dissent is counted as an assent to the plan. This alternative procedure was, no doubt, induced by reason of the fact that " the holders of mortgage investments in many thousands of issues are numerous and it has been difficult to obtain concerted action by them." (Mortgage Commission Act, art. 1, § 1, ¶ 7.) Experience had demonstrated that in numerous cases it was impossible to secure the necessary sixty-six and two-thirds per centum of affirmative written assents to a plan of readjustment, not because of objections to a plan, but due to lack of interest or attention by the certificate holders.

It is argued that the provisions of the act which authorize these negative assents violate the due process clauses of the State and Federal Constitutions (State Const. art. 1, § 6; U. S. Const. 14th Amendment). The argument is without merit. The mechanics by which assents to a plan of reorganization may be manifested is obviously a matter of procedure for the State to determine so long as the procedure fixed is reasonable under the circumstances of the case.

It was so held by the Supreme Court of the United States in *Gilfillan* v. *Union Canal Co.* (109 U. S. 401, 404; 3 S. Ct. 304; 27 L. Ed. 977). Chief Justice WAITE, writing for the court in that case, said (109 U. S. 401, at p. 404; 3 S. Ct. 304, 306; 27 L. Ed. 977): " *It seems to us a proper exercise of legislative power*

*to require a minority to act whenever such an arrangement is proposed, and to provide that all shall be bound who do not, in some direct way, within a reasonable time after notice, signify their refusal to concur.* To sustain such legislation it is only necessary to invoke the principle enforced in statutes of limitations, which makes neglect to sue within a specified time conclusive evidence of the abandonment of the cause of action. As was said in *Terry* v. *Anderson,* 95 U. S. 628 [24 L. Ed. 365], where the limitation was of actions upon certain legal obligations that embarrassed the entire community at the close of the late civil war, ' the obligation of old contracts could not ' in this way ' be impaired, but their prompt enforcement could be insisted upon or their abandonment claimed.' " (Italics the court's.) (See, also, *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 434, note 13; 54 S. Ct. 231, 238; 78 L. Ed. 413.)

The dissenter provision of the Mortgage Commission Act, recognizing the necessity for prompt action in the reorganization of a defaulted mortgage, calls upon the certificate holder to dissent from the plan after seasonable notice to him. His time to dissent does not expire until at least thirty days after the notices have been mailed. If in that period he fails to act because of lack of interest or inertia, it may reasonably be inferred that he approves. It would be manifestly unjust to the other certificate holders to permit such negligent delay to thwart a scheme of readjustment which the court finds fair and equitable.

The act assailed thus allows the certificate holder a reasonable time after proper notice to be counted against the plan, if he does not favor it, by saying so in writing. In any event, the plan may not become effective until the court ratifies it as fair and equitable. I am of the view that the provision of the Mortgage Commission Act which counts one who does not dissent as being in favor of a plan of readjustment is reasonable, and that the provision attacked does not violate the due process clause of our State or of our Federal Constitution.

As to the second contention, that the act makes no adequate provision for notice to the certificate holder of the proceedings. Article 5, section 7, of the Mortgage Commission Act, as amended, provides that the Commission shall file with the clerk of the court a statement of the plan as promulgated, and notice of hearing to each certificate holder shall be sent by registered mail to his address as it appears on the records of the Mortgage Commission, the Superintendent of Insurance or the issuing guarantee company, and also that such notice must be published at least twenty days before the return date in a daily newspaper of general circulation in the county

where the hearing is had, which is the county where the mortgaged property is located. The hearing may not take place less than thirty days after the mailing of notice. Notice by publication and by registered mail thus provided is a complete and effective form of service upon the certificate holder. The Schackno Act, section 6, subdivision 1, provides merely for notice by ordinary mailing, and not by registered letter. That provision of the Schackno Act, together with its other provisions, was upheld by our Court of Appeals (*Matter of People* [*Title & Mortgage Guarantee Co. of Buffalo*], 264 N. Y. 69).

It is to be noted that rehabilitation proceedings are not adversary in nature.

The character of notice prescribed by the Legislature here is such that the parties concerned will with reasonable probability be apprised of the proceedings, and they are afforded an opportunity to be heard before an impartial tribunal. Such notice in proceedings of this nature is clearly sufficient. (*Security Bank* v. *California*, 263 U. S. 282; 44 S. Ct. 108; 68 L. Ed. 301; *American Land Co.* v. *Zeiss*, 219 U. S. 47, 67; 31 S. Ct. 200; 55 L. Ed. 82; *Matter of Empire City Bank*, 18 N. Y. 199, 215. Cf. Banking Law, §§ 72, 73 and 74; *Matter of Societa, etc., Di Savoia* v. *Broderick*, 260 N. Y. 260.) Moreover, in the proceeding under attack no claim was made by any certificate holder that notice of the promulgation of the plan had not actually been received. The second contention of the objector is without merit.

For the foregoing reasons the claims that the Mortgage Commission Act is unconstitutional, and that the court is without jurisdiction to approve this plan promulgated thereunder are overruled. At the hearing no one objected to the plan of readjustment upon the ground that it was arbitrary or inequitable to the certificate holders. In the light of the testimony, I find the plan proposed a fair one and designed reasonably to safeguard the substantial rights of all certificate holders. There being only one written dissent filed by a holder owning a certificate in the principal amount of $1,000 (which is but one per cent of the total principal amount of the said mortgage outstanding), the plan is approved. Submit order.