Jerome B. E. Wolff, J.
Pursuant to an order of this court, a hearing was held on a motion to suppress evidence procured by means of a wire-tap order and an order of search and seizure. This court held (46 Misc 2d 405), in a prior decision, that since intercepted telephonic conversations were used to *861 procure the order for search and seizure and were obtained by a wire-tap order that, therefore, a hearing should be held in reference to both orders since each one had become an integral part of the other. This hearing has now been held. The facts briefly stated are as follows: A witness for the People, a Mrs. Barbara Cook, is employed at Willard State Hospital as a switchboard telephone operator. The crux of her testimony is that sometime in October of 1963 she had spoken to State Police Officer Louis Lonsani, and informed him at that time, that she overheard a telephone conversation of the defendant in which he mentioned certain football teams. Thereafter, State Police Officer Louis Lonsani informed the witness that she should eavesdrop or intercept the telephone communications of the defendant, Dr. Sheldon Rogers, and inform him of these telephone conversations in order that he may report it to headquarters. Mrs. Cook testified that from October of 1963 to October of 1964, when the defendant was arrested, that she intercepted telephone communications between the defendant and other persons; kept notes as to the time, the dates, telephone numbers and parts of telephonic communications and conversations of Dr. Sheldon Rogers and other persons to whom he spoke. She further testified that she gave these notes and records that were taken by her to the State Police for their information.
State Police Officer Louis Lonsani testified and admitted that he had spoken to Mrs. Cook and had received these notes over a period of approximately one year, and further admitted that he instructed the witness to eavesdrop on all telephone conversations of the defendant. The third witness to testify for the People was Lt. Warren Surdam, a lieutenant-supervisor of the State Police stationed at headquarters in Oneida. Lt. Surdam testified, and admitted upon cross-examination that sometime in July of 1964 he assumed that Mrs. Cook was eavesdropping and intercepting telephonic communications between the defendant and other persons. He further stated that, in the early part of 1964, he was not aware that Mrs. Cook was eavesdropping in any manner.
Lt. Surdam was the State Police Officer who signed the affidavits in order to procure the wire-tap orders. In the prior motion before this same court, the court understood, and it was presented to the court that only one order concerning a wire tap of the defendant’s telephone was issued and that was on September 23, 1964. Upon the hearing, it was learned that three Avire-tap orders were issued, namely, one on June 4, 1964; one on July 30, 1964 and the last order on September *862 23,1964, the only order of which this court had knowledge prior to this hearing.
All the affidavits and court orders procured by the State Police were received in evidence at this hearing. All the affidavits, as executed by Lt. Surdam, are identical in their wording and in their allegations. The pertinent part of each affidavit consists of three short paragraphs. The first paragraph states, in substance, “ that the investigation to date indicates that one Dr. Sheldon Bogers is engaged in the crime of bookmaking and gambling and is using a telephone listed under the records of the Trumansburg Home Telephone Company, Phelps, New York as Willard 869-5625 in conducting illegal calls relative to gambling and other crimes.” The second paragraph states, ‘ ‘ further, that confidential information has been received that the aforesaid Dr. Sheldon Bogers is engaged in illegal bookmaking and other crimes and that this information has been, in part, substantiated by toll-slip analysis which disclose numerous calls to known gamblers in various states.” The third paragraph reads, “ further, that the investigation to date reveals reasonable grounds to believe that the aforesaid Dr. Sheldon Bogers is involved with an interstate gambling syndicate encompassing the activities of all sporting events. ’ ’
It is provided under Federal statute (U. S. Code, tit. 47, § 605), that wire tapping or eavesdropping on telephonic communications is illegal, and it is also illegal under section 813-b of the Code of Criminal Procedure, except when it is procured by a court order by law-enforcement officials. Assuming for the moment that Mrs. Cook’s co-operation with the 'State Police was a matter of deep concern for herself in that she, as a private individual, was attempting to co-operate and work toward the means of effectuating justice, and that her eavesdropping and her interception of telephonic communications was done with all good intent and purpose. The State Police, by instructing her to continue the interception of telephonic communications and, furthermore, to even go one step further, and to make notes and prepare extracts of the telephonic communications between the defendant and other persons places and law-enforcement officials in a position where they actively participated in the use of intercepted telephonic communications which is a violation of not only the Federal law, but also of the State law.
The State Police violation of the law is further heightened since these intercepted conversations procured and transmitted by Mrs. Barbara Cook became a part of the criminal investí *863 gation by the State Police, and remained within their knowledge despite the fact that during this period three court orders were obtained to wire tap the defendant’s telephone. It is true that the defendant procured another telephone aside from the one that was connected directly through the switchboard as operated by Mrs. Barbara Cook. It is noteworthy to observe that the telephone, as listed to the defendant, was on a two-party line; and also involved another person who was making calls using the same line, but on a different number. It might be argued that the evidence procured by means of the wire-tap orders was sufficient in and of itself in order to procure enough evidence as against the defendant, notwithstanding the telephonic communications as procured by Mrs. Cook. This position might be well argued if it were not for the constant eavesdropping by Mrs. Cook for a period of one year wherein the State Police were participating in the illegal interception of telephonic communications, while they were procuring wire-tap orders one after another during the same period.
The intermingling of illegal evidence procured by Mrs. Cook with, possibly, some legal evidence procured by means of the wire-tap order casts a shadow upon the entire investigation, and upon the means and methods of procuring evidence; and since there was scienter at the time when court orders were issued, the nebulous affidavits which, upon their face, seemingly presented probable cause, but only after a hearing actually revealed their true basis initially hidden behind cliche phrases such as, “ The investigation to date indicates ”, “ Further, that confidential information has been received ’ ’, and ‘1 Further, that investigation to date reveals reasonable grounds.”
The rule preventing the use of evidence procured or derived through primary illegality was set forth by the Court of Appeals in People v. Robinson (13 N Y 2d 296, 301), wherein it was stated, ‘ ‘ we are compelled by decisions of the United States Supreme Court to apply the rule that, if the evidence to which objection is made was acquired by exploitation of the primary illegality, such evidence must also be excluded.” (Wong Sun v. United States, 371 U. S. 471, 488.)
The primary illegal eavesdropping permeates the wire-tap orders and since the order for search and seizure is dependent and based upon the telephonic communications of the defendant, the illegal thread has entwined itself throughout the order for search and seizure.
Therefore, the motions for the suppression of all evidence procured by means of the wire-tap orders and the order for search and seizure is hereby granted in all respects.